Doris Jean SWANSON, Respondent,

v.

Paul Eugene SWANSON, Appellant.

No. 55062.

Supreme Court of Missouri,
Division No. 2.

March 8, 1971.

Henry Warten and Charles D. Tudor, Joplin, for respondent.

Emerson Foulke, Joplin, for appellant.

PRITCHARD, Commissioner.

This is an appeal from a decree of divorce wherein respondent was awarded $36,000.00 alimony in gross payable over a ten-year period at $300.00 per month; $4,000.00 as reimbursement for necessities furnished by respondent for her and her children from her separate funds from the date of separation of the parties to May 15, 1968, the date of the decree; and an allowance of $3,000.00 attorney fees and $750.00 suit money. That part of the divorce decree dissolving the marriage and the judgment in partition of real estate owned by the parties as tenants in common after the divorce are not here in issue.

There was no limitation upon the payment of alimony in gross on the contingencies of death or remarriage of the parties. Appellant's jurisdictional statement here sets forth merely the amounts of the awards and concludes that the amount in dispute is in excess of $15,000.00. It is not specifically set forth that any amount of the judgment is excessive, but it is said in Point II that the $36,000.00 award was "certainly an abuse of the lower court's discretion," and appellant cites in his brief Lemp v. Lemp, 249 Mo. 295, 155 S.W. 1057, and Biggs v. Biggs, Mo.App., 397 S. W.2d 337, for his argument that the alimony award was excessive. He says those cases awarded about ten percent of the husband's wealth as alimony in gross. In oral argument appellant stated that no case had awarded more than fifteen or twenty percent of the husband's wealth as alimony in gross, and stated in answer to a question of the court that about $28,800.00 of the award was disputed. Aside from mere excessiveness of the award, the brief contains the statement, "The judgment for alimony in gross should be set aside completely as it has no support in the evidence." It is apparent that cases such as Hill v. Hill, Mo., 443 S.W.2d 192, where there was no claim or any demonstration that the alimony award was excessive in any amount, are not controlling. Here, appellant seeks to be relieved of the entire $36,000.00 award, or to be relieved of an amount thereof in excess of this court's jurisdiction. It must be concluded that this court has appellate jurisdiction of this case.

At the time of trial appellant was 42 and respondent was 40 years of age. Both were in good health. They were married August 4, 1946. Thereafter both attended college in Pittsburg, Kansas, for two years during which time appellant drove a bus.

The education of the parties was completed in Manhattan, Kansas, appellant in veterinary medicine and respondent in education, both receiving degrees. Respondent taught school in Manhattan making $1,800.00 per year at first, and the two of them started a trailer home business making $6,000.00 to $7,000.00 the first year. Then they came to Joplin, Missouri, where they purchased property at 28th and Range Line from Dr. Donald Crockett, respondent's brother, for his cost, $1,800.00. On this property an animal hospital was constructed which appellant operated. The couple first lived in a trailer house on this property, then bought a two-bedroom house at 3012 Pearl. After their two children were born, Marilyn Kay in 1953 and Donny in 1955, they built a home in which respondent operated a kindergarten after 1958 earning a net income therefrom of around $2,300.00 to $2,400.00 per year. Appellant's net income from his veterinary business rose from $6,700.00 in 1963 to $24,600.00 in 1966, and he admitted that his taxable income was about the same in 1967 as in 1966.

In January, 1966, the parties purchased a farm in Newton County, paying $52,000.00 therefor and giving a mortgage thereon for about $27,000.00. About $22,000.00 of funds derived from the sale of the Manhattan, Kansas trailer business was used to improve the farm in 1967.

In January, 1967, Miss Maxine Bradley entered appellant's employ. He thereafter made trips with her and transferred his affections from respondent to her, the rift which caused the separation of the parties. Appellant underwent an operation for hernia in the latter part of 1967, and advised respondent he would not return home and that he wanted a divorce. Respondent thereafter filed suit, at which time appellant was staying at the farm with Miss Bradley. He removed a Thunderbird and a Cadillac from the home of the parties, leaving respondent without transportation. She was forced to use a $3,000.00 note due her from the Crockett Oil Company to purchase a new car. Previously, respondent had withdrawn $1,400.00 from a joint account and redeposited $235.00 therein, and attempted to attach appellant's account with the stockbroker firm of B. C. Christopher & Company, but he had just withdrawn $5,003.70 therefrom.

From her mother's estate respondent was beneficiary of trust funds totaling $15,500.00 at the time of trial, from which she derived a monthly income of $100.00. She had two notes from the Crockett Oil Company and the Joplin Oil Company totaling $6,000.00, with an annual income of $300.00. She had a new Pontiac automobile which cost $3,400.00, and a Certificate of Deposit for $4,083.50. The distributive shares of the parties from the partition of jointly owned real estate were $14,811.69 each. The Newton County farm was still in partition, and, although respondent suggests it is worth more, the net value of each party's one-half interest is said by appellant to be $11,596.35. Appellant's individual property and values thereof were: Thunderbird car, $1,800.00; Cadillac car, $2,500.00; received from B. C. Christopher & Company, $5,003.70; cash values of life insurance policies, $8,750.00 (omitted in appellant's brief). His debts were, note to First National Bank, $4,000.00; insurance policies loan, $3,800.00; and money borrowed to pay overdraft, $900.00. As accurately as may be gleaned from this record, respondent's net worth was $55,391.54, and her monthly income was about $325.00; and appellant's net worth was $35,761.74. Each party also had one-half interest in a trust account, as found by the court, amounting to $9,429.95 cash and 100 shares of Pan American World Airways, Inc. The evidence shows without question that from the time of their marriage their property was accumulated by their joint efforts.

█ It is frequently said in cases dealing with the amount of alimony to which a wife is entitled the considerations are: "the financial status of the parties; the extent of their individual estates; their in-

comes; their obligations; their necessities; the contributions of each to the property accumulated during the marriage; the likely future prospects of each; their ages; their health; their ability to engage in gainful occupations; their children and the disposition made of their custody; the duration of the marriage; and whether it was one of affection or convenience; and the conduct of the parties which caused the divorce, and the comparative responsibility of each for it." Rutlader v. Rutlader, Mo. App., 411 S.W.2d 826, 830 [7] and cases cited. It is also often said that an allowance of alimony is an exercise of the sound discretion of the court, Ridgley v. Ridgley, Mo.App., 370 S.W.2d 679, which is subject to review and which will be corrected on appeal if it has been manifestly abused. Gross v. Gross, Mo.App., 319 S.W.2d 880; Rutlader v. Rutlader, supra; and Landreth v. Landreth, Mo., 454 S.W.2d 495, 497 [2].

In this case respondent has a net worth of about $15,000.00 to $20,000.00 more than appellant. Their jointly held property accumulated during the marriage has been equally divided except the Newton County farm which is in the process of partition. Appellant is obligated to pay not only his listed debts, but will be obligated to pay $4,000.00 to respondent for her necessities up to trial and $3,750.00 attorney fees and suit money as hereinafter ruled. The likely future prospect of each as to income is that appellant should continue to have about the same return from his veterinary business, $24,000.00 per year, as he has had in the past; respondent is a qualified school teacher by reason of which she should realize some augmented income, and she will have $300.00 monthly support money for the two children of the parties from appellant until the children become of age or are emancipated. Respondent testified that her monthly needs for herself and her children amounted to about $800.00.

■ The difficulty with this case is that the court allowed $36,000.00 alimony in gross, which is about ninety percent of ap-

pellant's net worth, although the court did permit the judgment to be paid in monthly installments of $300.00 for ten years. Such an award in gross, considering the relative wealth of the parties, would be excessive under the cases. Compare Landreth v. Landreth, supra, where the award in gross was about twenty percent of the husband's estate; Carr v. Carr, Mo., 232 S.W.2d 488, where an award was reduced to about three-tenths of separate and joint property; and see also Lemp v. Lemp and Biggs v. Biggs, supra. Any unpaid balance of the judgment of alimony in gross would be a lien on appellant's estate. § 452.080, RSMo 1969, V.A.M.S. It would not be subject to termination upon respondent's remarriage, § 452.075, RSMo 1969, V.A.M.S., or upon her death. The monthly amount payable thereunder would not be subject to future modification upon a future showing of a change in the needs and means of the parties. Respondent is a relatively young woman. Her children will become of age in 1974 and 1976. Her marital status may change as well as her future needs; and the ability of appellant financially to meet respondent's future needs may also change. In such a case as this it would be better to award alimony from "year to year" as the statute, § 452.080, permits. See Bowzer v. Bowzer, 236 Mo.App. 514, 155 S.W.2d 530, 535 [11, 12], which held in similar circumstances, "Such an arrangement would not encumber the property of respondent or be any hurt to his business or interfere with his earning power so long as he was not in default in the monthly payments." Respondent has stated her needs and those of her children to be about $800.00 per month. She will have child support of $300.00 per month, and a probable personal income of at least $200.00 per month. It is apparent that an award of $300.00 per month alimony from year to year would be adequate for her present needs and within appellant's ability to pay. The judgment should be modified from the $36,000.00 award of alimony in gross to alimony from year to year.

■ Appellant says the court went outside the pleadings in rendering a judgment for $4,000.00 for reimbursement to respondent for necessities furnished to herself and the children from her separate funds. He says the petition does not state that respondent spent any of her own funds for necessaries and does not ask for reimbursement. He argues that this portion of the judgment is void because the court was wholly without jurisdiction to render it. Paragraph 8 of the petition pleads that plaintiff is without means for support of herself and the children and for the prosecution of the case, and that defendant has amply sufficient earnings and income to support her and the children and to pay the costs and expenses of the suit. The prayer does not specifically request the court to reimburse respondent for her expenditures for necessaries. It asks generally for alimony and support money as the nature of the case may require, and winds up asking for such further orders as to the court shall seem meet and just. The evidence of amounts expended by respondent for necessaries from the date of separation to the date of trial came into the case without objection. Respondent testified she wrote checks for a total of $3,-138.19, an average of $774.55 per month for the first four months of 1968. The petition pleads that respondent lived with appellant as his wife until December 10, 1967, and the decree awarded respondent the $4,000.00 from the date of separation to May 15, 1968. Applicable is Civil Rule 55.54, V.A.M.R., providing that issues tried by express or implied consent of the parties, although not raised in the pleadings, shall be treated as amending the pleadings. Compare O'Leary v. O'Leary, Mo.App., 385 S.W.2d 346, 347. The case of Smith v. Smith, Mo.App., 300 S.W.2d 275, answers appellant's contention that the court was without jurisdiction to render the $4,000.00 judgment. That case holds that the primary duty to support rests on the husband; actual dependency of the wife is not required; and a deserted wife using her separate estate to discharge such obligation is entitled to reimbursement from the husband upon the theory of a quasi-contractual relationship.

■ Appellant complains of the allowance to respondent of $3,000.00 attorney fees and $750.00 suit money. He says there was no evidence of how much time counsel for respondent spent on the count for divorce, that appraisal fees of $500.00 could only relate to the count in partition, and that counsel's testimony reveals that he spent a large portion of his time in getting hold of appellant's individual funds and stock held by B. C. Christopher & Company. The evidence shows that respondent's counsel devoted 124 hours to the case in conferences, discovery and protection of property of the parties, preparation of restraining orders, motions for alimony pendente lite, attorney fees and suit money, attending court, answers to interrogatories, depositions, preparation for trial and a memorandum brief for the court. The normal charge made by his law firm was $30.00 per hour, and the minimum fee schedule of the Jasper County bar was $25.00 per hour. Count III was for partition of jointly owned property wherein counsel was granted a fee of $2,940.00 for handling the proceedings to final approval and order of distribution. The allowance to respondent for attorney fees is supported by the evidence. His testimony as to the same was advisory and was not binding on the court. Bucknam v. Bucknam, 347 Mo. 1039, 151 S.W.2d 1097; Knauss v. Knauss, Mo.App., 425 S.W.2d 713. The amount of time devoted to the case by the lawyer is but one element to be considered in arriving at a just award, and another element is the husband's financial condition and his ability to pay. Glick v. Glick, Mo. App., 336 S.W.2d 528. The amount of attorney fees is left largely to the discretion of the trial court for the reasons stated in Keefe v. Keefe, Mo., 435 S.W.2d 313, 317 [6, 7] and cases cited. Appellant's cited case of Klamberg v. Klamberg, Mo.App., 428 S.W.2d 889, 895, disapproving an allowance of attorney fees where the wife's

financial status was superior to the husband's, is not helpful to him. Here, although respondent had net assets of some $15,000.00 to $20,000.00 more than appellant, the evidence shows that his ability to earn, judged by his past net income from his veterinary business, is far superior to that of respondent. In the circumstances no abuse of discretion on the trial court's award of attorney fees and suit money to respondent appears.

The judgments for reimbursement for expenditures for necessaries, for attorney fees and suit money are affirmed. The judgment for alimony is reversed and the case remanded with directions to enter a judgment of alimony for respondent from year to year in the amount of $300.00 per month.

BARRETT, C., concurs.

STOCKARD, C., not sitting.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.